UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

RAMAH NAVAJO CHAPTER,
OGLALA SIOUX TRIBE, and
PUEBLO OF ZUNI, for themselves
and on behalf of a class of persons
similarly situated,

    Plaintiffs,

vs.                        No. 90 CV 957 JAP/KBM

SALLY JEWELL, Secretary of Interior,
in her official capacity,
LAWRENCE S. ROBERTS, Acting Assistant Secretary,
Indian Affairs, in his official capacity,
and
UNITED STATES OF AMERICA,

    Defendants.

vs.

PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS, CHANCE ALBERTA, NANCY AYALA, TRACEY BRECHBUEHL, CARL "BUZZ" BUSHMAN, LUKE DAVIS, CLAUDIA GONZALEZ, HAROLD HAMMOND, PATRICK HAMMOND III, NOKOMIS HERNANDEZ, DIXIE JACKSON, DORA JONES, REGGIE LEWIS, MORRIS REID, CHARLES SARGOSA, JENNIFER STANLEY, TOM WALKER, IRENE WALTZ, and KAREN WYNN,

Defendants-in-Interpleader.

# MEMORANDUM OPINION AND ORDER
# GRANTING UNOPPOSED MOTION FOR SUMMARY JUDGMENT IN INTERPLEADER ACTION

On June 22, 2017 seven Defendants-in-Interpleader filed the following: (1) NOTICE OF MOTION AND UNOPPOSED MOTION FOR SUMMARY JUDGMENT by Defendants-in-

Interpleader PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS, CLAUDIA GONZALES, HAROLD HAMMOND, PATRICK HAMMOND III, DIXIE JACKSON, MORRIS REID, and TOM WALKER (Doc. No. 1507) (Notice); (2) UNOPPOSED MOTION FOR SUMMARY JUDGMENT by Defendants-in-Interpleader PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS, CLAUDIA GONZALES, HAROLD HAMMOND, PATRICK HAMMOND III, DIXIE JACKSON, MORRIS REID, and TOM WALKER (Doc. No. 1508) (Motion); and (3) DECLARATION OF CLAUDIA GONZALES in support of the UNOPPOSED MOTION FOR SUMMARY JUDGMENT by Defendants-in-Interpleader PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS, CLAUDIA GONZALES, HAROLD HAMMOND, PATRICK HAMMOND III, DIXIE JACKSON, MORRIS REID, and TOM WALKER (Doc. No. 1509) (Gonzales Decl.). The Defendants in the main action and the Class Representative Plaintiffs, who are also the Plaintiffs-in-Interpleader, consent to the Motion. All of the remaining Defendants-in-Interpleader, except one, have consented to the Motion. Defendant-in-Interpleader Jennifer Stanley has not explicitly consented to the Motion. Ms. Stanley was served with the summons and the Complaint-in-Interpleader but has not timely filed a responsive pleading. (Notice at p. 2.) Ms. Stanley was also given notice of the Motion and has not filed a timely response. Under Local Rule 7.1(b) she is deemed to have consented to the Motion.[1] The Court will grant the Motion as to all Defendants-in-Interpleader on the merits. As to Ms. Stanley, the Court will also grant the Motion under Local Rule 7.1(b).

In the Motion, Defendants-in-Interpleader Picayune Rancheria of Chukchansi Indians (Picayune Rancheria or Tribe), Claudia Gonzales (Chairwoman Gonzales), Harold Hammond (H. Hammond), Patrick Hammond III (P. Hammond), Dixie Jackson (Jackson), Morris Reid

---

[1] Local Rule 7.1 states, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.L.R.-Civ. 7.1(b).

(Reid), and Tom Walker (Walker) assert that the undisputed facts show the leadership dispute regarding the governance of Picayune Rancheria has been resolved and that current Chairwoman Gonzales is the proper person to act on behalf of the Picayune Rancheria. The Court agrees and will order the Settlement Administrator to send the Tribe's Claim Form to Chairwoman Gonzales, to accept the Claim Form properly executed by Chairwoman Gonzales, and to disburse the Tribe's share of the settlement funds ($927,087.36) according to the instructions of Chairwoman Gonzales.

I.   STANDARD OF REVIEW

    A.   SUMMARY JUDGMENT

Under the Final Settlement Agreement (Doc. No. 1306-1), Picayune Rancheria, identified as Class Member No. 455, is entitled to receive the amount of $927,087.36, less any Treasury deductions. *See* Motion (Doc. No. 1361), Ex. B (Doc. No. 1361-2), ORDER (Doc. No. 1362). To receive its share of the Net Settlement Amount, however, a person with authority to act for the Tribe must execute a Claim Form. A dispute arose as to which member of the Tribe had the authority to execute the Claim Form for the Tribe. On September 29, 2016, the Plaintiff Class, through Class Counsel, filed a COMPLAINT IN INTERPLEADER (Picayune Rancheria of Chukchansi Indians) (Doc. No. 1369) asking the Court to interplead the Tribe and all members claiming a right to govern the Tribe and to determine who is entitled to execute a Claim Form on behalf of the Tribe and to receive the Tribe's share of the settlement funds ($927,087.36). (Compl. in Interpl. ¶ 9.)[2]

---

[2] The Final Settlement Agreement was approved by the Court in AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW APPROVING FINAL SETTLEMENT AGREEMENT AND AWARDING ATTORNEYS' FEES AND COSTS (Doc. No. 1350) and JUDGMENT APPROVING SETTLEMENT AND AWARDING ATTORNEYS' FEES AND COSTS (Doc. No. 1347).

In the Motion, the Court is asked to conclude that the Tribe has resolved its leadership dispute and that Chairwoman Gonzales leads the Tribal Council and is entitled to act on behalf of the Tribe.

Rule 56 provides,

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). Hence, the Court must determine whether the proffered evidence establishes who is entitled to execute the Claim Form on behalf of the Tribe. *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002) ("[O]ur role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim.").

B. INTERNAL TRIBAL GOVERNANCE

In *Wheeler v. United States Dept. of the Interior*, the Tenth Circuit stated the axiom that only an Indian tribe has the authority to determine its self-governance. 811 F.2d 549, 551 (10th Cir. 1987). "[T]he Supreme Court has uniformly recognized that one of the fundamental aspects of tribal existence is the right to self-government." *Id.* (citations omitted). "Tribal election disputes, like tribal elections, are key facets of internal tribal governance and are governed by tribal constitutions, statutes, or regulations." *Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of Mississippi in Iowa,* 609 F.3d 927, 943 (8th Cir. 2010) (quoting Felix Cohen, Cohen's Handbook of Federal Indian Law § 4.06[1][b][ii] (5th ed.2005)). It is a long-standing matter of Indian law that "federal courts lack authority to resolve internal disputes about tribal law." *Cayuga Nation v. Tanner*, 824 F.3d 321, 327 (2d Cir. 2016). Thus, tribal governance

disputes, which are controlled by tribal law, "fall within the exclusive jurisdiction of tribal institutions." *Attorney's Process*, 609 F.3d at 943. Once the dispute is resolved through internal tribal mechanisms, all parties must recognize the tribal leadership embraced by the tribe itself. *Id.*

II.     BACKGROUND: UNDISPUTED FACTS

The Picayune Rancheria's constitution provides that the Tribe is governed by the seven-member Tribal Council. (Gonzales Decl. Ex. A.) The Tribal Council is elected by the General Council, which consists of all adult enrolled members of the Tribe. (*Id.* ¶ 5.) The Tribe's constitution empowers the Tribal Council to *inter alia* conduct government to government relations and to collect, administer, and expend tribal funds. (*Id.* ¶ 6.)

In December 2011, some members of the Tribe challenged the results of the October 1, 2011 election of the Tribal Council. (*Id.* ¶ 7.) Beginning in 2012, at least three factions purporting to act on behalf of the Tribe applied to the Bureau of Indian Affairs (BIA) Pacific Regional Director to enter into contracts under the Indian Self-Determination and Education Assistance Act (ISDEAA), Pub. L. 93-638 (known as "638 contracts"). (*Id.* at ¶ 8.) *See also California v. Picayune Rancheria of Chukchansi Indians*, Case No. 1:14-CV-01593 LJO SAB, 2015 WL 9304835, *2–*4 (Dec. 22, 2015) (discussing history of leadership dispute). On February 11, 2014 in a consolidated administrative appeal of several agency decisions regarding the applications for 638 contracts, the BIA Pacific Regional Director held that it was not possible for the BIA to ascertain which faction could lawfully act for the Picayune Rancheria. In other words, the BIA determined it did not have authority to decide the dispute, as "disputes regarding leadership of Picayune Rancheria . . . are controlled by tribal law, and fall within the exclusive jurisdiction of the [T]ribe." ANSWER TO COMPLAINT IN INTERPLEADER (Doc. No. 1402)

Ex. 5 at p. 20. However, since "recognition of a government" was essential for entering into 638 contracts, the Pacific Regional Director held that the BIA would recognize the "last uncontested" Tribal Council, elected in December 2010 (the 2010 Tribal Council) on an interim basis until the Tribe resolved the leadership dispute. *Id.* That decision was appealed to the Interior Board Indian Appeals (IBIA). *Id.* Ex. 6 at 1; Ex. 7.

In early October 2014, a group of armed individuals attempted to take over the Tribe's casino on behalf of one leadership faction, and the National Indian Gaming Commission (NIGC) ordered immediate closure of the casino. *Id.* Ex. 6 at 2. On October 10, 2014, the State of California sued the Tribe in federal court and obtained a preliminary injunction prohibiting the Tribe from operating the casino until public safety was "adequately protected." *California*, 2015 WL 9304835 at *4.

The 2010 Tribal Council called for a clean slate[3] election to be held on October 3, 2015 for all seven seats. (Gonzales Decl. ¶ 9.) Indian Dispute Resolution Services (IDRS), an independent organization, conducted the election. (*Id.*) That election produced the 2015 Tribal Council, which became the official governing body of the Tribe. In response, the 2010 Tribal Council entered a final resolution that effectively dissolved the 2010 Tribal Council and abdicated its authority. (*Id.* ¶ 11.) The 2015 Tribal Council reached agreements with the NIGC, the State of California, and the County of Madera to allow the casino to reopen. (*Id.* ¶ 12; Ans. Exs. 8–9.) On December 22, 2015, the United States District Court for the Eastern District of California entered a judgment and permanent injunction allowing the Tribe to resume operating the casino. *California*, 2015 WL 9304835 at *9–10. On January 21, 2016, the IBIA dismissed all pending administrative appeals associated with the dispute. (Ans. Exs. 7–8.)

---

[3] A clean slate election was an election of all seven members of the Tribal Council.

The next Tribal Council election, held on October 1, 2016, elected members to staggered terms, rather than electing all seven members to begin serving at the same time. (Gonzales Decl. ¶ 14.) At that election, Walker, P. Hammond, and Heather Airey were elected for two-year terms. (*Id.* ¶ 15.) Reid, H. Hammond, Gonzales, and Jackson, who received the four highest vote counts in the October 3, 2015 election, remained on the Tribal Council to serve the second year of their two-year terms. (*Id.* ¶¶ 10, 13.)

On March 23, 2017, the BIA entered into a 638 contract with the Tribal Council elected on October 1, 2016 in recognition of the resolution of the leadership dispute. (*Id.* ¶ 18.) On February 22, 2017, an Interior Department attorney informed the United States Department of Justice in an email that according to the BIA Division of Tribal Government Services, "[t]here is currently no dispute" regarding the Picayune Rancheria, explaining "[t]he previous dispute was resolved with a 2015 tribal election. BIA now recognizes and conducts business directly with the tribe via communication with Chairperson Claudia Gonzalez [sic]." *See* UNOPPOSED MOTION TO EXTEND TIME FOR SERVICE OF SUMMONS AND COMPLAINT-IN-INTERPLEADER (Picayune Rancheria of Chukchansi Indians) (Doc. No. 1420) Ex. 2.

III. DISCUSSION

The undisputed facts establish that the Picayune Rancheria has resolved its governance dispute through its own internal processes. Since the October 1, 2016 election, the current seven member Tribal Council has been recognized as the legitimate governing body of the Picayune Rancheria. Accordingly, the Court will grant summary judgment recognizing that Chairwoman Gonzales has the authority to execute the Claim Form as provided in the Final Settlement Agreement (Doc. No. 1306-1) and to receive the Tribe's portion of the settlement funds approved in this case. Since this was the only issue raised by the Complaint-in-Interpleader, the

Court will enter summary judgment dismissing the Complaint-in-Interpleader and will direct that a Claim Form be sent to Chairwoman Gonzales to the address provided by her. Further, the Court will order that upon receipt of a properly executed Claim Form from Chairwoman Gonzales, the Settlement Administrator must disburse the Tribe's share of the settlement funds to the Tribe in accordance with Chairwoman Gonzales' instructions.

Hence, the Court will grant summary judgment on the merits and as to Jennifer Stanley, who received notice of the Motion and did not timely respond, the Court will also grant the Motion under Local Rule 7.1(b).

IT IS ORDERED that the UNOPPOSED MOTION FOR SUMMARY JUDGMENT by Defendants-in-Interpleader PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS, CLAUDIA GONZALES, HAROLD HAMMOND, PATRICK HAMMOND III, DIXIE JACKSON, MORRIS REID, and TOM WALKER (Doc. No. 1508) is granted and a separate summary judgment will be entered.

_____
SENIOR UNITED STATES DISTRICT JUDGE